UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VIRGINIA GUILLEN PEREZ**, <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES** *et al.*, <br><br> Defendants. | Case No. 17-cv-2086 (CRC) |

**OPINION AND ORDER**

Virginia Guillen Perez began working as a clerical assistant in the District of Columbia Department of Employment Services in 2012. When she was terminated in October 2016, she brought suit against her former employer, alleging that it had discriminated and retaliated against her in violation of an assortment of federal laws. The defendants have filed a partial motion to dismiss several of the claims Guillen raised as well as two of the defendants she sued. The Court will grant the motion in part and deny it in part.

**I. Factual Background**

The following factual background is drawn from Guillen's amended complaint, taking her well-pled factual allegations as true as the Court must at this point in the case, see Doe v. Rumsfeld, 683 F.3d 390, 391 (D.C. Cir. 2012). On September 4, 2012, Guillen was hired as a Clerical Assistant by the District of Columbia Department of Employment Services ("the Department"). Am. Compl. ¶ 10. Guillen is a Hispanic woman who immigrated to the United States from the Dominican Republic. Id. ¶ 7.

In or around August 2014, Guillen informed the Department that she had been diagnosed with breast cancer. Id. ¶ 11. A few months later, in October 2014, Guillen underwent surgery

for her cancer and received authorization to take leave under the Family and Medical Leave Act for her procedure and recovery. Id. ¶¶ 13–16. Due to complications, Guillen was unable to return to work until December 2014. Id. ¶¶ 17–22.[1] When she returned, she had a new supervisor, Quinett Warrick. Id. ¶ 22. According to Guillen, Warrick was unhappy that she had taken and continued to take leave for her medical issues and instituted a series of retaliatory actions, including giving Guillen negative performance reviews in weekly reports and altering Guillen's time cards. Id. ¶¶ 23, 25, 30.

Around that time, Guillen also began complaining about receiving less pay than her African-American coworkers, and filed a complaint alleging racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). Id. ¶¶ 26–27, 41. Guillen also complained to Warrick about other perceived double standards in the workplace, including that Warrick would allow African-American coworkers to show up late to work or to take unscheduled breaks but required Guillen to strictly follow the work schedule. Id. ¶¶ 33–39. When Warrick told Guillen she could not do anything about the unequal pay, Guillen wrote to another Department employee (the complaint does not specify her position), Monnikka Madison, seeking a raise. Id. ¶ 48.

After speaking to Madison, Guillen received a letter from the Director of the Department providing her advance notice of a proposed 10-day suspension. Id. ¶ 54. This suspension was allegedly based on Guillen mishandling two client phone calls. Id. ¶ 55. Guillen mediated the proposed suspension through her union's procedure. Id. ¶¶ 57–60. The next month, on September 28, 2015, Guillen filed a grievance with the District of Columbia (the complaint does

---

[1] Guillen's complaint states that she returned to work in December 2015. But in light of the successive events she describes, the Court assumes this is an error and Guillen meant to state she returned to work in December 2014.

2

not indicate which department) alleging discrimination by the Department on the basis of her race and national origin. Id. ¶ 69. She was ultimately terminated from her job effective October 9, 2015. Id. ¶ 70.

Following her termination, Guillen filed a charge with the D.C. Office of Human Rights (which was deemed cross-filed with the EEOC due to the work-share agreement between the two agencies) alleging various violations of District and federal law by the Department. After receiving a right to sue letter from the EEOC, Guillen brought suit in this Court against the Department, the District of Columbia, and District Mayor Muriel Bowser. She charged the defendants with violating: (1) Title VII of the Civil Rights Act, by discriminating against her on the basis of race and national origin and retaliating against her, Am. Compl. Counts 1–5; (2) the Federal Equal Pay Act, by paying her less than her coworkers, id. Count 6; (3) the Americans with Disabilities Act, by discriminating against her on the basis of her disability, id. Count 7; (4) the federal Family and Medical Leave Act, by interfering with her exercise of her rights under that act and retaliating against her, id. Counts 8-9; and (5) the District's Family and Medical Leave Act, id. Count 10. The District filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in response.

II. **Legal Standard**

In order to adequately state a claim for relief, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Thus, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining whether a complaint does so,

the Court "must take all of the factual allegations in the complaint as true," id., and "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006). In its analysis, the Court "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Id.

A motion to dismiss for a plaintiff's failure to exhaust administrative remedies is "properly addressed as [a] motion[ ] to dismiss for failure to state a claim." Scott v. Dist. Hosp. Partners, 60 F. Supp. 3d 156, 161 (D.D.C. 2014). Since failure to exhaust remedies is an affirmative defense, "the defendant bears the burden of pleading and proving it." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). As relevant here, to exhaust administrative remedies under Title VII a plaintiff must file a charge of unlawful discrimination with the EEOC within 180 days of the allegedly unlawful act. 42 U.S.C. § 2000e-5(e)(1). This deadline is extended to 300 days when there is a work-sharing agreement between the EEOC and the relevant state anti-discrimination agency (in this case, the D.C. Office of Human Rights). Id.; see also Byrd v. District of Columbia, 807 F. Supp. 2d 37, 58 (D.D.C. 2011) (explaining that because of the work-sharing agreement between the D.C. Office of Human Rights and the EEOC, the deadline to file an administrative charge is 300 days).

### III. Analysis

The District seeks the dismissal of two of the defendants in this case as well as a handful of the claims that Guillen has raised. The Court will grant the motion in part and deny it in part, as detailed below.

A. Dismissal of defendants other than the District.

First, the District argues that the Department of Employment Services and Mayor Bowser should be dismissed as defendants because neither is a proper defendant in this case. As to the Department, multiple judges in this District have recognized that subordinate departments within the District of Columbia government are *non sui juris* and thus cannot be sued absent explicit statutory authorization, consistent with the general principal that non-corporate governmental bodies cannot be sued without statutory authorization. See, e.g., Kangethe v. D.C. Dep't of Emp't Servs., 891 F. Supp. 2d 69, 71–72 (D.D.C. 2012); Trifax Corp. v. District of Columbia, 53 F. Supp. 2d 20, 26 (D.D.C. 1999) (citing Blackmar v. Guerre, 342 U.S. 512 (1952)). Guillen offers no response to this case law and points to no statutory authorization for suit. Accordingly, the Court will dismiss the Department as a defendant.

As to Mayor Bowser, the Supreme Court has recognized that "[t]here is no longer a need to bring official-capacity actions against local government officials" because "local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Because Guillen does not allege any individual-capacity claims against Mayor Bowser, her official-capacity claims against the Mayor are redundant and will be dismissed, consistent with the practice of other judges in this District. See, e.g., McManus v. Williams, 519 F. Supp. 2d 1, 5 (D.D.C. 2007).

B. Dismissal of Count 6 (Equal Pay Act) for failure to state a claim.

Second, the District submits that Count 6 of Guillen's amended complaint, which raises a claim under the Equal Pay Act, should be dismissed for failure to state a claim. The Equal Pay Act was passed "to remedy the 'ancient but outmoded belief' that a man should be paid more than a woman for performing the same duties." Cornish v. District of Columbia, 67 F. Supp. 3d

345, 360 (D.D.C. 2014) (citation omitted). It makes it unlawful for an employer to "discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). There are thus three elements a plaintiff must make out to state an Equal Pay Act claim: (1) that the plaintiff "was doing substantially equal work on the job" as members of the opposite sex, (2) that the plaintiff's job "was performed under similar working conditions," and (3) that the plaintiff "was paid at a lower wage than those members of the opposite sex." Cornish, 67 F. Supp. 3d at 360; see also Musgrove v. Government of District of Columbia, 775 F. Supp. 2d 158, 165 (D.D.C. 2011) (same).

Guillen's amended complaint does not meet these three requirements. Indeed, her amended complaint never once avers that her pay differed because of her *sex*, rather only because of her *race*. See, e.g. Am. Compl. ¶ 42 ("Plaintiff did the same work as her comparators, who are American and African American."). Nowhere does her complaint mention the sex of Guillen's coworkers or otherwise discuss sex or gender, in contrast to the multiple references to race and national origin. See, e.g., id. at ¶ 47 (discussing pay of "African American coworkers" and noting that Guillen "was the only Hispanic employee"); id. ¶ 53 ("Guillen as of that date was the only Hispanic employee in the call center out of 15 employees. The other employees were African American.").[2] In fact, she appears to expressly disclaim any basis for the pay differential other than race: "The disparity in pay was not based on merit or any other

---

[2] The named coworkers she mentions all appear to be female. See Am. Compl. ¶ 34 (referencing her coworkers Charmaine Harris and Gwendolyn Jones).

6

employment related metric than race and national origin." Id. ¶ 42. As a result, Guillen has not pled that she received less pay because of her sex, and has therefore failed to state an Equal Pay Act claim.

Guillen argues that she does state a valid Equal Pay Act *retaliation* claim: her amended complaint alleges that she complained to her supervisors about receiving less pay and was then fired. It is true that the Fair Labor Standards Act generally prohibits retaliating against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" its protections, including those of the Equal Pay Act. 29 U.S.C. § 215(a)(3). But even if her amended complaint had mentioned an Equal Pay Act retaliation claim, Guillen never alleges that she filed a complaint "under or related to" a protection within the Fair Labor Standards Act. Again, her complaint repeatedly and exclusively states that she complained about not receiving equal pay because of her *race* or *national origin*. See, e.g., Am. Compl. ¶ 26 ("Guillen complained to Warrick that she continued to be paid less than her African American comparators[.]"); id. ¶ 44 ("Plaintiff stated that the disparity in pay was based on her national origin from Dominican Republic and her race as Hispanic."). The Fair Labor Standards Act does not prohibit race or national-origin discrimination in pay, solely gender discrimination. Thus, Guillen's complaints about race-based or national origin-based pay discrimination would not fall within the scope of the protections of the Equal Pay Act and she has not alleged a retaliation claim. The Court will therefore dismiss her Equal Pay Act claim.

C. Dismissal of Count 7 (ADA) for failure to state a claim.

The District further argues that Count 7 of Guillen's amended complaint, which asserts a claim under the Americans with Disabilities Act ("ADA"), should be dismissed for failure to state a claim. The ADA prohibits discrimination against individuals with disabilities. 29 U.S.C.

§ 794. It encompasses both intentional discrimination as well as failure to accommodate. See, e.g., Badwal v. Bd. of Trs. Of Univ. D.C., 139 F. Supp. 3d 295, 308 (D.D.C. 2015). To state a claim for intentional discrimination, a plaintiff must allege that (1) she has a disability, (2) she was qualified for the position with or without reasonable accommodation, and (3) she suffered an adverse action because of her disability. See, e.g., id. In turn, to state a claim for failure to accommodate, a plaintiff must allege that (1) she was a qualified individual with a disability, (2) her employer had notice of her disability, and (3) her employer denied her request for a reasonable accommodation. See, e.g., id. at 312. The Court concludes that Guillen has failed to state either a failure-to-accommodate or intentional-discrimination claim.

As to the first, Guillen never points to any accommodation that she failed to obtain. Instead, her complaint expressly states that she always received any requested leave. Am. Compl. ¶¶ 21, 32. This leaves an intentional-discrimination claim. Guillen points to two adverse actions potentially connected to her disability, her lower pay and her ultimate discharge. But these actions are regularly and consistently linked to *racial* or *national origin* discrimination, not *disability* discrimination. For instance, every complaint that Guillen alleges she made to her employers about disparate pay or working conditions involved race-based or national origin-based treatment.[3] And, as noted above, her complaint appears to expressly disclaim any basis for the pay differential other than race: "The disparity in pay was not based on merit or any other employment related metric than race and national origin." Id. ¶ 42. Similarly, the failure to

---

[3] See Am. Compl. ¶ 26 ("Guillen complained to Warrick that she continued to be paid less than her African American comparators."); id. ¶ 37 ("Guillen complained to Warrick about her double standards [regarding time off and arrival/departure time]."); id. ¶ 41 ("Gullen complained that she was not being paid the same amount of money as her African American Comparators."); id. ¶ 44 ("Plaintiff stated that the disparity in pay was based on her national origin . . . and her race[.]").

8

promote—and complaints that Guillen made concerning that failure—is linked to racial and national origin discrepancies. Id. ¶¶ 47–53 (explaining that all of Guillen's African American coworkers were Grade 7 and Guillen, the only Hispanic employee, was Grade 5 but did the same work as everyone else). In sum, Guillen never once offers factual allegations supporting a causal nexus between the adverse actions (her discharge or pay discrepancy) and her disability.[4] Accordingly, her complaint fails to adequately plead disability discrimination.

In response, Guillen contends that Count 7 should not be dismissed because she alleged a proper retaliation claim under the ADA. But her complaint never raises such a claim. Count 7 is entitled "ADA-disability discrimination." In it, Guillen states that the District violated the ADA "by *discriminating against* Guillen because of her disabilities." Am. Compl. ¶ 119 (emphasis added). She states that she has suffered "[a]s a result of *this discrimination*." Id. ¶ 120 (emphasis added). Nowhere does Guillen reference *retaliation* in violation of the ADA, in direct contrast to her explicit invocation of retaliation claims under Title VII and the Family and Medical Leave Act. See id. ¶ 105 ("By the above acts, Defendants violated Title VII . . . prohibit[ions against] *retaliation* against an employee who opposes discrimination, and participates in protected activity." (emphasis added)); id. ¶ 129 ("Defendants blatantly violated the FMLA by issuing unreasonable performance evaluations, increased scrutiny and punitive scheduling . . . and discharging Guillen *in retaliation for* the exercise of her rights under the FMLA." (emphasis added)). This failure to invoke retaliation in Count 7, in contrast to her other

---

[4] This is further emphasized by the fact that the only charges of discrimination on grounds other than race or national origin that Guillen alleges she made came *after* she was terminated. Compare Am. Compl. ¶ 70 (Guillen terminated on October 8, 2015) with id. ¶¶ 74–77 (Guillen filed other charges after December 29, 2015).

counts, emphasizes that Guillen never raised such a claim. Consequently, she has failed to state any claim of a violation of the Americans with Disability Act and the Court will dismiss Count 7.

D. <u>Dismissal of Count 10 as time-barred.</u>

In addition, the District argues that Count 10, which asserts a claim under the District's Family and Medical Leave Act, should be dismissed as time-barred because Guillen did not file suit within one year of the last adverse action (her termination). Admittedly, the law provides a one-year statute of limitations for D.C. Family and Medical Leave Act claims. D.C. Code § 32-510(b). However, District regulations provide that this statute of limitations is tolled while a plaintiff pursues administrative remedies. D.C. Mun. Regs. tit. IV, § 1610.3. Guillen's May 2016 charge with the D.C. Office of Human Rights raising her D.C. Family and Medical Leave Act claim was timely filed. <u>See</u> D.C. Code § 32-509(a) (allowing a complaint to be filed within one year of the alleged violation). It therefore tolled the relevant statute of limitations, pursuant to District regulations, and her claim is timely as a result. The Court will thus deny this aspect of the District's motion to dismiss.

E. <u>Dismissal of Counts 3 and 4 as duplicative of Counts 1 and 2.</u>

Next, the District moves to dismiss Counts 3 and 4 of the amended complaint because they are duplicative of Counts 1 and 2. The Court may dismiss "identical" or "duplicative" claims, namely "those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." <u>Wultz v. Islamic Republic of Iran</u>, 755 F. Supp. 2d 1, 81 (D.D.C. 2010).

In Count 3, Guillen alleges a failure to promote because of her race. <u>See</u> Am. Compl. ¶¶ 95–98. But in Count 1, Guillen already alleges discrimination on the basis of race in violation of Title VII, including a failure to promote. <u>See id.</u> ¶ 86. These two alleged violations of Title

VII involve the same facts and legal standards, and would result in the same relief. There is no indication of a separate legal theory advanced in Count 3 as opposed to Count 1. Thus, Count 3 is duplicative of Count 1 and the Court will grant the District's request to dismiss it.

In Count 4, Guillen raises a "disparate treatment" claim under Title VII, alleging she was "subjected to unequal terms and conditions of employment" because of her race and national origin. Id. ¶ 101. But in Count 1 and Count 2, Guillen already pled discrimination in violation of Title VII on the basis of race and national origin. See id. ¶¶ 83–94. Both of these claims have the same legal standard, involve the same set of facts, and would have the same relief. Nor does Guillen present a different legal theory in Count 4 as opposed to Counts 1 and 2. Consequently, Count 4 is duplicative of Counts 1 and 2 and the Court will grant the District's motion to dismiss this count too.

F.  Dismissal of parts of Counts 1 and 2 for failure to exhaust administrative remedies.[5]

Finally, the District argues that some of Guillen's Title VII claims—specifically those related to negative performance evaluations and the failure to promote her to a Grade 7 position—should be dismissed for failure to exhaust administrative remedies. In order to later raise a claim under Title VII in court, the plaintiff must first exhaust that claim in the administrative process. See, e.g., Crawford v. Duke, 867 F.3d 103, 109 (D.C. Cir. 2017). To do so, the plaintiff must provide an agency "'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it." Id. at 109 (citation omitted.).

---

[5] The District also moves to dismiss Count 3 on this basis. Since the Court has already dismissed Count 3 as duplicative, it need not address that argument.

Starting with the failure to promote claim, it is true that the description in the charge that Guillen filed with the D.C. Office of Human Rights makes no reference to a failure to promote. Defs.' Mem. P. & A. Supp. Partial Mot. Dismiss Ex. 1 (administrative charge).[6] However, Guillen attests that she attached additional documents to her charge. Pl.'s Opp'n Defs.' Partial Mot. Dismiss Ex. 3 (Guillen Declaration). The D.C. Circuit has clarified that documents attached to an administrative charge are treated as part of that charge. Crawford, 867 F.2d at 107. One of those documents is an email regarding Guillen's request for a promotion, and another is an email referring to her supervisor, Warrick, having an "agenda to fire [Guillen]" and "creat[ing] a hostile work environment around [Guillen]." Pl.'s Opp'n Defs.' Partial Mot. Dismiss Ex. 4. In light of these emails, particularly the one specifically referencing a promotion request, the Court concludes that the charge sufficiently placed the agency on notice of her failure to promote claim to enable investigation. See Crawford, 867 F.3d at 109–10 (holding that attaching performance evaluation to administrative charge and referencing supervisors' attempts to set plaintiff up to fail sufficed to exhaust claim of discriminatory performance evaluation).

That said, none of the attached documents mention the performance evaluations. Nor does the body of the charge itself. Given the overall silence in the administrative charge documents as to performance evaluations—and the absence of any indication that Guillen raised those claims in any other charge or amendment to her charge—the Court concludes she failed to adequately exhaust her remedies as to those claims and will dismiss them.

---

[6] The Court can rely on the administrative charge and documents attached thereto without converting this motion into one for summary judgment because the charges are referred to in Guillen's complaint and are documents that her claims necessarily rely on. See, e.g., Charles v. District of Columbia, 164 F. Supp. 3d 98, 100 (D.D.C. 2016), aff'd, 690 F. App'x 14 (D.C. Cir. 2017).

* * *

For the foregoing reasons, it is hereby

**ORDERED** that [12] Defendants' Partial Motion to Dismiss be GRANTED IN PART and DENIED IN PART.  The District of Columbia Department of Employment Services and Muriel Bowser shall be dismissed as defendants.  Counts 3 and 4 shall be dismissed as duplicative, Counts 6 and 7 shall be dismissed for failure to state a claim, and the evaluations claims in Counts 1 and 2 shall be dismissed for failure to exhaust administrative remedies.  The other aspects of Defendants' Motion shall be denied.

**SO ORDERED**.

<br>

CHRISTOPHER R. COOPER
United States District Judge

Date:  April 6, 2018